**John Henry MAI, Appellant,**

v.

**Cathie Duffy MAI, Appellee.**

No. 01-92-00611-CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 18, 1993.

James T. Lombardino, Houston, for appellant.

Sarah Smith Dickson, League City, Scott Lyford, Galveston, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

Appellant, John Henry Mai, appeals from a child support modification order. In five points of error, he asserts that the evidence is legally and factually insufficient to support the award; that the trial court abused its discretion in setting the award in an amount greater than (1) the guidelines for child support set forth in the Family Code, and (2) the needs of the children; and that the trial court erred in failing to make additional findings of fact. We reverse and remand.

Appellant and appellee were married on February 22, 1970, separated on April 29, 1981, and divorced as of July 30, 1982. The couple had three children. The divorce decree required appellant to pay $150 per week in child support until the last child had reached the age of 18 years. By judgment dated July 9, 1983, child support was set at $120 per week until January 24, 1983, $80 per week until the second child reached 18 years, then $40 per week until the third child had reached 18 years. Appellee has not remarried and continues to

live in the house owned by the couple when they separated. Appellant has remarried. About the time of the divorce, he left the job he had held during the marriage and started his own business.

On February 21, 1990, appellee filed a motion to modify child support for the two younger children, Matthew and Christopher. She sought to increase child support, to lengthen the term of payments through their graduation from high school, and to require appellant to maintain major medical, hospital, and dental insurance on the children through his employer and reimburse appellee for half of all health care expenses not covered by insurance. On November 15, 1991, appellee filed an amended motion to modify alleging that the youngest child, Christopher, had a physiological disorder/disability that required continuous special care and learning facilities for an indefinite period.

On March 4, 1992, the parties agreed that they would have joint managing conservatorship of Christopher, that appellant would get the tax deduction for Christopher as long as he pays child support and court-ordered expenses, that Christopher would remain in counseling with a designated psychologist, and that one-half the cost for this counseling not paid by insurance would be paid by each party. The issue of child support was then tried to the court. Both parties testified and were represented by counsel.

On April 8, 1992, appellant timely requested that certain findings of fact be recited in the child support order as provided by TEX.FAM.CODE ANN. § 14.057 (Vernon Supp.1993). The trial court issued its order to modify on April 14, 1992, requiring appellant to pay $1,900 per month in child support beginning July 1, 1991, until Matthew graduated from high school, married, died, had a disability removed, was otherwise emancipated, or there was a further order modifying child support; and $1,500 thereafter until Christopher was likewise emancipated. The trial court recited its findings in its order modifying child support:

1) The amount of net resources available to Obligor [appellant] per month is $7647.39;

2) The amount of net resources available to Obligee per month is $2596.24;

3) The amount of child support payments per month that is computed if section 14.055, Family Code, is applied, is $1911.85;

4) The percentage applied to the obligor's net resources for child support by the actual order rendered by the court is 24.84507%; and, if applicable,

5) The specific reasons the amount of support per month ordered by the court varies from the amount computed by applying the percentage guidelines pursuant to section 14.055, Family Code, are: Rounded down to even $1900 after rounding gross up to even $11,000 from $10,970 which is $\frac{1}{12}$ of average of 1989 and 1990 adjusted gross incomes.

On April 28, 1992, appellant requested findings of fact and conclusions of law in accordance with TEX.R.CIV.P. 296. On April 30, 1992, the trial court issued its findings of fact and conclusions of law, including finding number nine: "Christopher Mai requires continuous care and personal supervision because of a physiological disorder/disability and will be required to have special care and learning facilities."

On May 11, 1992, appellant requested that the trial court make additional findings of fact and that finding nine be deleted. In response, the trial court added a finding that "Upon granting the Motion to Modify in Suit Affecting the Parent–Child Relationship, the parties were named joint managing conservators." The trial court also deleted finding nine regarding Christopher's special care and learning needs.

 In point of error three, appellant asserts that the trial court abused its discretion in awarding child support in the amount of $1,900 per month for two children and $1,500 per month for one child. In points of error one and two, appellant asserts that the evidence is legally and factually insufficient to support the award. In point of error four, appellant asserts that the trial court erred in setting the

award above the percentage guidelines set forth in TEX.FAM.CODE ANN. § 14.055 (Vernon Supp.1993) and at an amount greater than the needs of the children. In point of error five, appellant asserts that the trial court erred in refusing his requested additional findings relating to his net monthly resources. Points of error one, two, four, and five raise factors which we consider to determine whether the trial court abused its discretion in setting the award, as asserted in point of error three. Under an abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds of error but are rather relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990).

In this case, the trial court issued findings of fact and conclusions of law. Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are not conclusive, however, when the record includes a complete statement of facts. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985).

In reviewing legal insufficiency points of error, we consider only the evidence and the inferences that, when viewed in their most favorable light, tend to support the finding and disregard all evidence to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Giangrosso v. Crosley*, 840 S.W.2d 765, 768 (Tex.App.—Houston [1st Dist.] 1992, no writ). If there is more than a scintilla of evidence, the no evidence point fails. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

In reviewing factually insufficient points, the court must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). An insufficient evidence assignment of error succeeds only if a finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex.1951); *Giangrosso*, 840 S.W.2d at 768.

Appellant first complains that the trial court erred in determining his net resources because it ignored his uncontradicted testimony that his 1992 gross monthly income is $3,900 per month, or $2,859 after taxes. Appellant argues that when the percentage guidelines are applied to this net income, he should have been required to pay "$714.90 per month for two children, and $571.92 per month for one child." The trial court declined to adopt the following proposed findings of fact submitted by appellant:

M) Respondent's monthly gross wages are $3,900 per month.

N) Finding #7 should be amended as follows: the net resources available to Respondent for the part of child support each month, at the time of trial is $2,859.61.

. . . .

Q) Respondent presented uncontradicted testimony that his gross salary at time of trial was $900 per week.

Appellee counters that appellant waived his request for additional findings because he filed his request one day late under TEX.R.CIV.P. 298. Rule 298 provides that the request for findings "shall be made within ten days after the filing of the original findings and conclusions by the court." The trial court filed its findings on April 30, 1992. Appellant filed his request on May 11, 1992. The request was timely because the 10th day after the court filed its findings was a Sunday, and May 11, 1992, was the following day. TEX.R.CIV.P. 4.

We find that there is sufficient evidence in the record to support the trial court's determination of appellant's net re-

sources of $7,647.39 per month. Appellant testified that he had a high school education and was the president and sole stockholder of Midway Machine Shop. He started the business about 10 years ago after leaving Grumman Aerospace where he was a machinist. The business does "field-related machine work and also sell[s] aerospace and defense-type machine work." His machine shop is dependent primarily on the oil and aerospace industries and on defense contracts.

At trial, appellant's 1989 and 1990 tax returns, 1991 W–2 and 1099 forms, his sons' tax returns for various years, and the written deposition of Sun Savings were introduced in evidence. Appellant's wages and adjusted gross income were $79,684 and $98,855 in 1989, and $146,108 and $164,426 in 1990. Appellant's wages were $99,400 in 1991, and in addition, he received building rents of $37,500 and equipment rents of $4,980 from his company. Appellant testified that prior to 1989, his "taxable income" was about $600 per week and that his current "gross salary" is about $900, or $685 after taxes, per week. He does not receive any bonuses from his company. Appellant's testimony concerning his current salary was uncontradicted.

Appellant further testified that in the last six months, business has fallen off 30 to 40 per cent, and he has been forced to lay-off some of his employees. He drives a company-owned car, and his wife drives a car that appellant leases to the company. His company has a profit-sharing plan, but he does not know how much is in it. In November 1990, appellant and his current wife purchased a home for $172,000, paying $20,000 down. Appellant testified that he took $100,000 out of his business to pay for the move, which was reflected in his wages.

Appellee introduced the 1986, 1987, and 1988 income tax returns for the oldest child, John Jr., the 1987 income tax return for Matthew, and the 1987 and 1988 tax returns for Christopher. Each return showed about $2,500 in income paid by appellant's company in each year. Appellant testified that this money was for the children's education. Appellee also showed that appellant had established a $20,000 trust account for Matthew in 1990, the funds of which were withdrawn in 1991.

Appellant testified that his current expenses are: $10,870 per year on a $500,000 life insurance policy; $2,000 per year on a $200,000 insurance policy; $1,000 per year for a $100,000 life insurance policy; $2,160 per year for health insurance for two children; $150 per month for cholesterol and blood pressure medicine for himself; $2,400 per year for car insurance; $500 per year for miscellaneous insurance; $300 per year for life insurance on each child; $22,032 per year for payments on his primary residence, including insurance and taxes; $7,200 per year for food for two adults and Christopher on the first, third and fifth weekends; $350 per month for utilities; $12,000 per year for a building payment; $6,000 per year for building insurance; $2,000 per year in taxes on the building; $18,000 in building maintenance; $25,000 per year paid to his wife out of his salary; $2,000 in maintenance on the machines; $600 per year in maintenance on his vehicles; and about $150 per month for Christopher for such items as clothes and haircuts.

The trial court found that appellant had $7,647.39 per month in net resources, being the average of appellant's adjusted gross income for 1989 and 1990. Appellant did not provide the court with tax returns from years prior to 1989, the year he claims his income spiked, to rebut the inference that 1989 and 1990 represented his true resources. Neither did appellant produce profit and loss statements from his company to reflect the cyclical nature of his business or any recent downturn. Appellant's 1989 and 1990 adjusted gross income, together with his ability to fund significant current expenses, provide sufficient evidence to support the trial court's finding. We hold that the trial court did not abuse its discretion in determining appellant's net resources.

Appellant next argues that the trial court abused its discretion because there is no evidence or insufficient evidence to support

additional child support over the guidelines as set forth in TEX.FAM.CODE ANN. § 14.-055(c). He asserts that a trial court may award an additional amount only upon proof of the needs of the child.

Appellee counters that when an obligor has net resources over $4,000 per month, section 14.055(c) is not the exclusive guiding statute for determining additional amounts of child support. Appellee argues that the "needs of the children" are not limited to expenditures for necessaries, but must also encompass the obligor's ability to pay and the obligor's lifestyle.

■■■ The best interest of the child is always the primary consideration of the court in determining child support. TEX. FAM.CODE ANN. § 14.07(a) (Vernon Supp. 1993). A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford,* 801 S.W.2d at 109; *Lambert v. Lambert,* 545 S.W.2d 542, 544 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

Section 14.08 of the Family Code provides that the court with continuing jurisdiction of the suit affecting the parent-child relationship may, after a hearing, modify a portion of a decree that:

> [P]rovides for the support of a child if the circumstances of the child or a person affected by the order or portion of the decree to be modified have materially and substantially changed since its entry, except that a support order may be modified only as to obligations accruing subsequent to the motion to modify.

TEX.FAM.CODE ANN. § 14.08(c)(2) (Vernon 1986).

Section 14.056, entitled "Modification of Prior Orders" provides:

> (a) Effect of Guidelines. The court may consider the guidelines for the support of a child in this chapter to determine whether there has been a material and substantial change in circumstances under Section 14.08(c)(2) of this code that may warrant a modification of an existing child support order if the modification is in the best interest of the child. However, an increase in the needs, stan-

> dard of living, or lifestyle of the obligee since the rendering of the existing order does not warrant an increase in the obligor's child support obligation. If the amount of support of a child contained in the order sought to be modified is not in substantial compliance with the guidelines, this may warrant a modification of a prior order in accordance with the guidelines if the modification is in the best interest of the child.

> (b) Additional Factors. In addition to the factors listed in these guidelines, a court may consider other relevant factors. The support obligation owed to a subsequently born or adopted child does not constitute cause to decrease the amount of an existing child support order. The history of support voluntarily provided in excess of the court order does not constitute cause to increase the amount of an existing child support order.

> (c) Net Resources of New Spouse. A court may not add any portion of the net resources of a new spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered on a motion to modify. Similarly, a court may not subtract the needs of a new spouse or of a dependent of a new spouse from the net resources of the obligor or obligee. An increase in the needs, standard of living, or lifestyle of the obligee does not constitute cause to increase the obligor's child support obligation.

TEX.FAM.CODE ANN. § 14.056 (Vernon Supp. 1993).

Section 14.055 of the Family Code, entitled "Guidelines: Amount Ordered," provides:

> (a) Rebuttable Presumption. The guidelines for the support of a child in this chapter are specifically designed to apply to situations in which the obligor's monthly net resources are $4,000 or less. In any suit affecting the parent-child relationship, there is a rebuttable presumption that an order containing the amount of periodic child support payments established by the schedule provided in this

section is reasonable and that the order is in the best interest of the child. A court may determine that the application of the guidelines would be unjust or inappropriate under the circumstances.

(b) Schedule: $4,000 or Less Monthly Net Resources. In rendering an order of child support under circumstances in which the obligor's monthly net resources are $4,000 or less, the court shall presumptively apply the following schedule:

### CHILD SUPPORT GUIDELINES

BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR

 1 child 20% of Obligor's Net Resources
 2 children 25% of Obligor's Net Resources
 3 children 30% of Obligor's Net Resources

 . . . .

(c) More Than $4,000 Monthly Net Resources. In situations in which the obligor's net resources exceed $4,000 per month, the court shall presumptively apply the percentage guidelines in Subsection (b) of this section to the first $4,000 of the obligor's net resources. Without further reference to the percentage recommended by these guidelines, *the court may order additional amounts of child support as proven, depending on the needs of the child at the time of the order.*

TEX.FAM.CODE ANN. § 14.055 (emphasis added).

In determining "equitable amounts of child support," section 14.052(b) of the Family Code provides:

Factors. In determining the amount of child support, the court shall be guided by the guidelines and may consider, in varying from or following the guidelines:
(1) the needs of the child;
(2) the ability of the parents to contribute to the support of the child;
(3) any financial resources available for the support of the child; and
(4) the amount of possession of and access to a child.

TEX.FAM.CODE ANN. § 14.052 (Vernon Supp. 1993).

Lastly, the Family Code provides in setting child support, the court "shall consider all relevant factors":

In applying the guidelines for the support of a child in this chapter, the court shall be guided by the guidelines for the support of a child in this chapter. However, the court may, in rendering its final determination of the amount of support, set the amount of child support either within or outside the range recommended in Section 14.055 of this code if relevant factors other than the guidelines justify a variance from the guidelines. In making its final determination, the court shall consider all relevant factors, including but not limited to:
(1) the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee including, as provided by Section 14.053(e) of this code, any increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;
(2) the age and needs of the child;
(3) child care expenses incurred by either party in order to maintain gainful employment;
(4) whether either party has the managing conservatorship or actual physical custody of another child;
(5) the amount of child support actually and currently being paid or received by either party under another child support order;
(6) the amount of alimony or spousal maintenance actually and currently being paid or received by a party;
(7) the expenses for a son or daughter for education beyond secondary school;
(8) whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;
(9) the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;

(10) provision for health care insurance and payment of uninsured medical expenses;

(11) special or extraordinary educational, health care, or other expenses of the parties or of the child;

(12) the cost of travel in order to exercise access to or possession of a child;

(13) positive or negative cash flow from any real and personal property and assets, including a business and investments;

(14) debts or debt service assumed by either party; and

(15) any other reason or reasons consistent with the best interest of the child, taking into consideration the circumstances of the parents.

TEX.FAM.CODE ANN. § 14.054 (Vernon Supp. 1993).

■ Appellant maintains that *Rodriguez v. Rodriguez,* 834 S.W.2d 369 (Tex. App.—San Antonio 1992, writ granted), is dispositive of this case. The *Rodriguez* court held that under section 14.055(c), when the obligor has net resources over $4,000, additional support above the statutory percentage as applied to the first $4,000 in net resources depends on the proven "needs of the child." The court reasoned that the "needs of the child" is the only factor to be considered, because when the legislature codified the 1987 judicial guidelines,[1] it eliminated "the lifestyle to which the child had become accustomed" and "the income of the parties" as factors in determining additional support. Further, the court reasoned, while other sections of the code provide factors to be considered in setting child support, section 14.055(c) specifically addresses additional support when the obligor's net resources are over $4,000. A specific statute prevails over general statutes. *Rodriguez,* 834 S.W.2d at 372; TEX.GOV'T CODE ANN. § 311.026 (Vernon 1988).

■ We agree with the reasoning of the *Rodriguez* court in finding that because section 14.055(c) controls when the net resources of the obligor exceed $4,000

per month, additional child support may only be awarded based on the proven needs of the child.

In the case before us, there is no finding of fact in the modification order to support additional child support based on the needs of either Matthew or Christopher. Upon timely written request or oral request made in open court during the hearing, a deviation from the guidelines must be supported by a finding recited in the order stating "the specific reasons that the amount of support per month ordered by the court varies from the amount computed by applying the percentage guidelines pursuant to Section 14.055, Family Code." TEX.FAM.CODE ANN. § 14.057 (Vernon Supp. 1993). Such a finding must be recited in the modification order itself, if properly requested, as was done in this case.

■ While there is some evidence in the record of Christopher's needs, we must decide whether such evidence was sufficient to justify the trial court's award. The trial testimony focused on appellant's earnings, not on the needs of one child or both children. Appellee argues that the trial court was aware that Christopher needed to be placed in a special care facility, and by agreement, Christopher's needs were not discussed at the hearing. The record, however, does not reflect any such agreement, nor does it contain a psychological report from Dr. Jameson, which appellee cites as confirmation of Christopher's need of psychological treatment.

The record does contain a psychological evaluation by Dr. Kennedy which reflects that "Participation in a social group for learning disabled/attention deficit children should be considered in the future," and that "Chris' parents need to address ways in which their joint behavior may exacerbate Chris' emotional functioning." Additionally, appellant testified that she had agreed that "Chris will remain in counseling with Emily Ginsberg at least twice a month or more often if requested by Emily Ginsberg." This evidence, however, is in-

---

1. SUPREME COURT OF TEXAS, CHILD SUPPORT GUIDELINES, *reprinted in* de la Garza, *Conservatorship, Visitation and Child Support,* in STATE BAR OF TEXAS, ADVANCED FAMILY LAW COURSE N–108 (1987).

sufficient to reasonably justify the amount of the additional child support awarded in this case. Because the trial court's award was unreasonable, we hold that the trial court abused its discretion.

We reverse the order of modification of support and remand the cause for further proceedings consistent with this opinion.